### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 14-cv-00248-REB

MARK ALAN PEROTIN,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

     Defendant.

---

## ORDER AFFIRMING COMMISSIONER

---

**Blackburn, J.**

     The matter before me is plaintiff's **Complaint** [#1],[1] filed January 29, 2014,

seeking review of the Commissioner's decision denying plaintiff's claims for disability

insurance benefits and supplemental security income benefits under Titles II and XVI of

the Social Security Act, 42 U.S.C. § 401, *et seq.*  I have jurisdiction to review the

Commissioner's final decision under 42 U.S.C. § 405(g).  The matter has been fully

briefed, obviating the need for oral argument.  I affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

     Plaintiff alleges that he is disabled as a result of arthritis of the wrists following

bilateral carpal tunnel release surgery, bilateral osteoarthritis of the shoulders,

degenerative disc disease, chronic neck and low back pain, obesity, and depression.

After his applications for disability insurance benefits and supplemental security income

---

[1]  "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on November 24, 2012.  At the time of the hearing, plaintiff was 57 years old.  He has a high school equivalency diploma and past relevant work experience as a bookkeeper, auto parts delivery driver, and pizza delivery driver.  He has not engaged in substantial gainful activity since March 20, 2009, his alleged date of onset.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established that plaintiff's physical impairments were severe, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  Plaintiff's alleged mental impairment were determined to be non-severe.  The ALJ found that plaintiff had the residual functional capacity to perform a range of light work with certain postural restrictions. This residual functional capacity was consistent with the all the demands of plaintiff's past relevant work, and therefore, the ALJ found him not disabled at both step 4 of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude his from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the

2

impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518,

1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of

a severe impairment or combination of impairments does not require a finding that an

individual is disabled within the meaning of the Social Security Act.  To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial

gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d

335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for

determining whether a claimant is disabled:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3.  The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4.  If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).[2] *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

---

[2]  Throughout this opinion, although I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits, identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

4

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

## III. LEGAL ANALYSIS

Plaintiff claims the ALJ erred in finding that his mental impairment was not severe, in discrediting his subjective reports of pain, and in failing to more specifically delineate the demands of his past relevant work prior to concluding that he was not disabled at step 4.  Finding no such reversible error, I affirm.

Plaintiff first faults the ALJ for failing to find that his depression and anger issues constituted severe mental impairments at step 2.  The ALJ discussed the minimal evidence related to plaintiff's alleged mental impairments and concluded that these conditions had no more than minimal impact on his ability to perform work-related activities.  (Tr. 13-14.)  *See* **Social Security Ruling** 85-28, 1985 WL 56856 at *3 (impairment that is merely a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered" is not severe).  I perceive no error in the ALJ's conclusion in this regard, which conclusion was based on a thorough recitation of the evidence of record, including the reports of a consultative examiner and a state agency psychologist, both of whom opined that plaintiff's psychological issues imposed no more than minimal restrictions on his work-related functionality.  (Tr. 43-44, 376-380.)

Even if this determination had been in error, however, any such error ultimately would have been harmless.  At step 2, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment.  ***See Dray v. Astrue***, 353 Fed.

Appx. 147, 149 (10th Cir. Nov. 17, 2009).  "Thus, step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'"  *Id.* (quoting **Bowen v. Yuckert**, 482 U.S. 137, 156, 107 S.Ct. 2287, 2298, 96 L.Ed.2d 119 (1987) (O'Connor, J., concurring)).  Because the conclusion that a claimant has at least one severe impairment requires the ALJ to proceed to the next step of the sequential evaluation, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe."  *Id.*  Such is the case here.

Relatedly, I reject plaintiff's argument that the ALJ erred in failing to include any limitations to account for these alleged mental impairments in her step 4 determination of plaintiff's residual functional capacity.  The ALJ specifically considered plaintiff's testimony that he had difficulty controlling his temper and was prone to outbursts, but concluded that this evidence was inconsistent with the limited mental health treatment records and plaintiff's testimony that he continued to look for jobs that required interaction with the public.  (Tr. 18.)[3]  The ALJ thus adequately explained her rationale for omitting any such limitations from plaintiff's residual functional capacity assessment.

Plaintiff next claims the ALJ erred in failing to assign greater functional restrictions based on his chronic pain.  The Tenth Circuit applies a tripartite test for evaluating subjective complaints of pain:

> We must consider (1) whether Claimant established a pain-
> producing impairment by objective medical evidence; (2) if

---

[3]  Plaintiff's suggestion that the ALJ cherry-picked the record is not supported by the evidence to which he cites.  Rather than demonstrate that plaintiff had continuing problems controlling his anger, these records show that plaintiff actually was attempting to *avoid* confrontations with another inmate in his pod (Tr. 330) but that he did not want to be a "snitch," despite being threatened (Tr. 332).

> so, whether there is a "loose nexus" between the proven
> impairment and the Claimant's subjective allegations of pain;
> and (3) if so, whether, considering all the evidence, both
> objective and subjective, Claimant's pain is in fact disabling.

*Musgrave*, 966 F.2d at 1375-76 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir.

1987)).  The ALJ cited this standard and then discussed at length plaintiff's allegations

regarding his pain and the limiting effects thereof.  (Tr. 15-16.)  She credited that plaintiff

suffered from pain, but noted, appropriately, that "disability is not the inability to work

without any pain."  (Tr. 19.)  *See Qantu v. Barnhart*, 72 Fed. Appx. 807, 811 (10th Cir.

2003); *Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986).  Ultimately, she

concluded that plaintiff's subjective complaints were inconsistent with the medical and

other evidence of record, including the results of a consultative examination and a

functional capacity examination, plaintiff's activities of daily living, the fact that he

continued to work as a bookkeeper after his alleged date of onset, his receipt of

unemployment benefits,[4] and his testimony about his functional abilities.  (Tr. 16-19.)

Plaintiff nevertheless maintains that this determination was flawed insofar as the

ALJ concluded that plaintiff had the residual functional capacity to use his hands

"frequently"[5] and declined to assign any restriction on his ability to reach forward.  To

the extent these alleged failings are premised on plaintiff's own testimony, the ALJ's

election to not fully credit his complaints is supported by specific and legitimate reasons

---

[4]  "[I]n order to receive unemployment benefits, [a claimant is] required to affirm that he was willing and able to work.  Such affirmations are inconsistent with claims of disability and thus negatively impact a claimant's credibility."  *Moses v. Astrue*, 2012 WL 1326672 at *3 (D. Colo. April 17, 2012) (internal citations omitted).

[5]  As defined by the Commissioner's regulations, "frequently" means "occurring from one-third to two-thirds of the time."  *See* **Social Security Ruling** 83-10, 1983 WL 31251 at *5-*6 (SSA 1983).

expressly linked to her thorough and cogent examination of the contrary evidence.  In general, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence."  ***White v. Barnhart***, 287 F.3d 903, 909 (10th Cir. 2001) (citing ***Kepler v. Chater***, 68 F.3d 387, 390-91 (10th Cir. 1995)).  Such deference is warranted here.

Although plaintiff further faults the ALJ for failing to more thoroughly discuss the opinion of physical therapist Phyllis Dibbern (***see*** Tr. 390-407), he does not explain how this report supports any limitation on his ability to reach forward, and the court finds nothing therein that addresses this aspect of his functional abilities.  (***See*** Tr. 397-398 (reporting results of tests measuring above-eye-level reaching and floor-to-eye-level reaching as "Meets Industrial Standards").)  As for Ms. Dibbern's conclusion that plaintiff's capacity for competitive employment was limited due to decreased grip strength and limited fine and repetitive dexterity secondary to pain (Tr. 391), the ALJ found these conclusions inconsistent with plaintiff's abilities as reported to the examiner herself, including particularly the abilities to write for up to two hours and use a computer for up to three hours (***see*** Tr. 395), as well as with plaintiff's testimony that he had no difficulty driving (Tr. 484), which the ALJ noted "requires sitting, reaching, and handling" (Tr. 18).

Moreover, the ALJ noted that Ms. Dibbern was not an acceptable medical source and that no acceptable medical source had imposed limitations on plaintiff's ability to reach.  (Tr. 20.)  ***See*** **Social Security Ruling** 06-03p, 2006 WL 2329939 at *1 (SSA Aug. 9, 2006).  Both the consultative examiner, Dr. Richard Carson (***see*** Tr. 382-384), the state agency physician, Dr. Anthony LoGalbo (***see*** Tr. 45-46) concluded that plaintiff

would be able to frequently grasp, finger, and handle.  The ALJ gave substantial weight to these contrary opinions, as it was her prerogative to do.  (*See* Tr. 20.)  *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988) (conflicts in the evidence are for the ALJ to resolve).  Her thorough discussion of the evidence of record sets forth her rationale sufficient to permit meaningful review of her decision.  *See Wall v. Astrue*, 561 F.3d 1048, 1068 (10th Cir. 2009).  I thus perceive no reversible error in this regard.

Finally, plaintiff faults the ALJ for not inquiring in more depth as to the specific demands of his past relevant work before finding that he could perform the jobs of auto parts delivery driver a bookkeeper as generally performed. (Tr. 20.)[6]  *See Social Security Ruling* 82–61, 1982 WL 31387 at *1 (SSA 1982); *Vendetti v. Astrue*, 2010 WL 3516652 at *5 (D. Colo. Aug. 31, 2010).  To the extent the ALJ should have delved into this issue in greater detail, any such error was undoubtedly harmless, as the evidence before her showed that plaintiff not only continued to work as a bookkeeper after his alleged date of onset but also continued to apply for bookkeeping jobs even as of the date of the administrative hearing.  *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995); *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988).  Moreover, in the absence of any suggestion that plaintiff's past relevant work was particularly unique among bookkeeping positions, the testimony of the vocational expert provided substantial evidence in support of the ALJ's determination.  *See Gillespie v. Astrue*, 2014 WL 1168872 at *10 (W.D. La. March 21, 2014) ("The value of a vocational

---

[6]  Although the ALJ also stated that plaintiff could perform the job of bookkeeper as he actually performed it (Tr. 20), the vocational expert testified that the restrictions imposed by the ALJ actually precluded such work as actually performed by plaintiff (Tr. 495).  Any such error undoubtedly was harmless, however, since "[t]he conclusion that a claimant is capable of performing her past relevant work is supportable if her residual functional capacity is coextensive with the demands of the job either as generally performed in the national economy or as plaintiff actually performed it."  *Vendetti*, 2010 WL 3516652 at *5 (D. Colo. Aug. 31, 2010).

expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.").

Relatedly, plaintiff contends that the vocational expert misclassified the bookkeeper's job.[7]  There are at least three problems with this argument.  First, it ignores the very reason for soliciting the opinion of a vocational expert.  Just as the ALJ may not substitute her own lay opinion for that of a medical expert, it would be inappropriate to substitute the lay opinion of plaintiff's counsel for the vocational expert's expertise, which plaintiff himself acknowledged at the hearing.  (Tr. 494.)  ***See Spencer v. Commissioner of Social Security***, 2014 WL 4351418 at *4 (S.D. Ohio Sept. 2, 2014) ("A vocational expert is uniquely qualified to determine how jobs are categorized or classified in the [*Dictionary of Occupational Titles*]."); ***Gillespie***, 2014 WL 1168872 at * 11 (noting that reliance on vocational expert testimony appropriate because "[t]he categorical requirements listed in the Dictionary of Occupational Titles do not and cannot satisfactorily answer every situation").  The folly of any attempt to supplant the vocational expert's opinion is plain here.  Plaintiff's suggestion that the position of General Ledger Bookkeeper (DOT # 210.382-046) more closely aligns with his testimony that 95 per cent of his work as a bookkeeper involved using the computer (Tr. 482)[8] than that of Bookkeeper (COT # 210.382-014), the job title suggested by the vocational expert and relied on by the ALJ, is not at all self-evident from the description

---

[7]  Plaintiff also argues that the vocational expert misclassified his past relevant work as an auto parts delivery driver, using an inapposite section of the *Dictionary of Occupational Titles*.  Yet even if the vocational expert did misclassify this particular position, the evidence that plaintiff could still perform his past relevant work as a bookkeeper is more than sufficient to support the ALJ's determination.

[8]  To the extent plaintiff may be suggesting that his testimony as to the extent to which he used a computer is incompatible with the limitation to frequent handling and fingering included in his residual functional capacity, the ALJ's finding – based on the testimony of the vocational expert – that he could perform the bookkeeper job as it was generally performed in the national economy supports the disability determination regardless.  ***See Vendetti***, 2010 WL 3516652 at *5.

of those jobs in the *DOT*.[9]  This court, no more than plaintiff, is not in any position to

question the vocational expert's classification of plaintiff's past relevant work on this

basis.

Second, plaintiff's argument that he could not perform this job because his

residual functional capacity should have included greater limitations on his abilities to

use his hands and to reach forward assumes that such restrictions were improperly

omitted from the ALJ's hypothetical to the vocational expert.  I already have concluded

that there was no error in the ALJ's residual functional capacity determination, and

therefore there was no error in this regard either.  ***See Gay v. Sullivan***, 986 F.2d 1336,

1341 (10th Cir. 1993) (hypothetical propounded to vocational expert need only include

such limitations as are supported by evidence).

---

[9]  The more general classification "Bookkeeper" is described in the DOT as:

> Keeps records of financial transactions for establishment, using calculator
> and computer:  Verifies, allocates, and posts details of business
> transactions to subsidiary accounts in journals or computer files from
> documents, such as sales slips, invoices, receipts, check stubs, and
> computer printouts.  Summarizes details in separate ledgers or computer
> files and transfers data to general ledger, using calculator or computer.
> Reconciles and balances accounts.  May compile reports to show
> statistics, such as cash receipts and expenditures, accounts payable and
> receivable, profit and loss, and other items pertinent to operation of
> business.  May calculate employee wages from plant records or time
> cards and prepare checks for payment of wages.  May prepare
> withholding, Social Security, and other tax reports.  May compute, type,
> and mail monthly statements to customers.  May be designated
> according to kind of records of financial transactions kept, such as
> Accounts-Receivable Bookkeeper (clerical), and Accounts-Payable
> Bookkeeper (clerical).  May complete records to or through trial balance.

*DOT* # 210-382-014.  The duties of "General Ledger Bookkeeper" are far less comprehensive, described
simply as "[c]ompiles and posts in general ledgers information or summaries concerning various business
transactions that have been recorded in separate ledgers by other clerks, using calculating or adding
machine."  *DOT* # 210-382-046.  Nothing in these descriptions clearly supports a conclusion that one
requires more use of a computer than the other or otherwise better matches plaintiff's description of his
past relevant work.

Finally, I reject plaintiff's suggestion that the inclusion of a limitation to occasional overhead reaching in the residual functional capacity assessment precludes the Bookkeeper position in any event.  The ALJ's hypothetical question to the vocational expert specifically included the overhead lifting restriction ultimately imposed, and the vocational expert affirmed that such a restriction would not preclude the bookkeeper position as generally performed.  (Tr. 495.)  The ALJ requested that the vocational expert inform her if any of her testimony conflicted with the *DOT*, and the vocational expert did not ever suggest that such a conflict existed.  (Tr. 494.)

Given this testimony, there was no conflict apparent on the record before the ALJ.  Plaintiff's attorney at the hearing certainly noted none, and nothing in the record suggests that this was "an instance in which the alleged conflict was so 'obvious . . . that the ALJ should have picked up on [it] without any assistance.'"  *Laughton v. Astrue*, 2009 WL 2372352 at *3 (D. Colo. July 30, 2009) (quoting *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)).  Accordingly, any error in failing to inquire more specifically about a conflict undoubtedly was harmless.  *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988).  The ALJ was entitled to rely on the vocational expert's testimony, which constitutes substantial evidence in support of her decision.[10]  *See Scheibeler*, 2009 WL 3077310 at *3.  *See also Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir. 2006) ("Nothing in SSR 00-4p [2000 WL 2989704 (SSA Dec. 4, 2000)] places an affirmative duty on the ALJ to conduct an independent investigation into the

---

[10]  Moreover, although the Department of Labor's companion guide, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993) ["*SOC*"], states that the bookkeeper position requires frequent reaching, it does not specify whether that limitation applies equally to reaching in any direction.  *See SOC* Pt. A, § 07.02.01(Mathematical Detail) at 328.  In affirming that the limitation to occasional reaching would not preclude this work, the vocational expert's testimony supports the ALJ's conclusion that the limitation on overhead reaching would not preclude the bookkeeper job as generally performed.

testimony of witnesses to determine if they are correct.").

## IV.  ORDERS

For these reasons, I find no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated May 19, 2015, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge